■ In the Matter of ROCKEFELLER CENTER, INC., Petitioner, against GEORGE M. BRAGALINI et al., Constituting the State Tax Commission, Respondents.— This is an article 78 proceeding to review a determination of the State Tax Commission denying petitioner's application for a partial refund of a mortgage recording tax. The mortgage, executed by Rocknom, Inc., a wholly owned subsidiary of petitioner, as mortgagor, to the Equitable Life Assurance Society, as mortgagee, covers a sublease of property at the corner of West 49th Street and the Avenue of the Americas, in New York City, and was given to secure the principal sum of $9,300,000 advanced, or to be advanced, in accordance with a building loan agreement. Before the mortgage was executed it was submitted to the Register of New York County which took the position that the principal amount of the indebtedness was indeterminate because the mortgage contained provisions whereby the mortgagee could, in the event of the mortgagor's default, make certain payments to protect its security. In order to get the mortgage recorded article 43 was added thereto with the qualified statement that the maximum amount secured by the mortgage in the event of any contingency was $10,900,000. The total recording tax was $54,500, and this was paid under protest. Petitioner seeks a refund

of tax calculated (50 cents for each $100, Tax Law, § 253) on the difference between $10,900,000 and $9,300,000, or $8,000. Article 27 of the mortgage, which presents the crucial part of the controversy, provides that the mortgagee may install a separate refrigeration plant on the premises if the mortgagor or sublessor fails to do so, and that the mortgagee's cost thereof is to be a charge on the property and secured by the mortgage. The issue presented is whether this clause makes the principal indebtedness indeterminate so as to require a recording tax on the value of the property, or upon the maximum amount to be secured in the event of any contingency as stated in the mortgage (Tax Law, § 256). The parties are agreed that the State Tax Commission correctly determined that payment by the mortgagee of defaulted taxes, assessments, water rates and sewer rates, would constitute an indebtedness incidental to the principal indebtedness secured by the mortgage, and would not make the principal indebtedness indeterminate. The Tax Commission however has found that the contingent additional indebtedness for the installation of a separate refrigeration plant amounts to a possible physical enhancement of the mortgage security itself, and constitutes a principal indebtedness and not an indebtedness incidental to the principal secured by the mortgage. In other words the Commission found that the installation of a refrigeration plant would amount to a capital improvement. It seems to us that the Commission's determination is a logical one. If the mortgagor fails to install a refrigeration plant, and the mortgagee does so, the cost is to be added to the indebtedness secured, but equally important the property itself, which is the security, is enhanced in value. Precedents seem to be scarce on this proposition, except for taxes, water rents, etc. (*Sidenberg* v. *Ely*, 90 N. Y. 257; *People ex rel. Title Guar. & Trust Co.* v. *Grifenhagen*, 156 App. Div. 854, affd. 209 N. Y. 569). Petitioner's argument with respect to the installation of a separate refrigeration plant is that such provision is necessary in order to prevent impairment of rental income resulting from a suspension of air-conditioning service for the lack of chilled water from an adjoining building, and a consequent impairment of the security; and hence that such a contingency is merely incidental to the principal sum secured. This reasoning is not persuasive. The amount involved is huge, $1,600,000, and however one approaches the problem the ultimate indebtedness is indeterminate except for clause 43 of the mortgage, which fixes the maximum at $10,900,000. Moreover, taxes, assessments, etc. are normal charges upon real property that exist, or will exist, irrespective of the will of the parties; but a refrigeration system that may cost $1,600,000 is not a charge that would exist in the ordinary course of events. Determination unanimously confirmed, with $50 costs and disbursements. Present — Foster, P. J., Coon, Gibson, Herlihy and Reynolds, JJ.